### ARROWHEAD FREIGHT LINES, Limited v. UNITED STATES et al.
### Civ. A. No. 14441.

United States District Court
S. D. California, Central Division.
Sept. 23, 1953.

538

Prentiss Moore, Bart F. Wade, Ralph H. Nutter, Los Angeles, Cal., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., Edward P. Hodges, Acting Asst. Atty. Gen., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., James E. Kilday, John H. D. Wigger, Sp. Assts. to Atty. Gen., Washington, D. C., Clyde C. Downing and James C. R. McCall, Asst. U. S. Attys., Los Angeles, Cal., for defendant United States.

Edward M. Reidy, Chief Counsel Interstate Commerce Commission, Leo H. Pou, Asst. Chief Counsel Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Before STEPHENS, Circuit Judge, and MATHES and JAMES M. CARTER, District Judges.

MATHES, District Judge.

This is an action to annul a cease and desist order of the Interstate Commerce Commission entered on April 8, 1952 in a complaint proceeding under § 204(c) of the Interstate Commerce Act, 49 U.S. C.A. § 304(c).

Jurisdiction of this court is invoked under 28 U.S.C. § 1336. See also: Id. §§ 2321–2325, 2284, 1398; 49 U.S. C.A. § 17(9); 5 U.S.C.A. § 1009; Am. Trucking Ass'ns v. United States, 1953, 344 U.S. 298, 318–320, 73 S.Ct. 307; United States v. L. A. Tucker Truck Lines, 1952, 344 U.S. 33, 73 S.Ct. 67.

The material facts are not in dispute. Plaintiff has been engaged as a common carrier of property by motor vehicle between Los Angeles Harbor and Ogden, Utah, serving various intermediate points, since prior to June 1, 1935, the effective "grandfather"-certificate date specified in the Motor Carrier Act of 1935, 49 Stat. 543, 551 (1935), 49 U.S. C.A. § 306.

Present Certificate No. MC–69526 authorizing this operation stems from a "grandfather" certificate issued pursuant to § 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306(a). By this certificate plaintiff is authorized to transport general commodities (with certain exceptions here immaterial) between Los Angeles Harbor and Ogden over a specified route.

Las Vegas, Nevada, on U. S. Highway 91, is an intermediate point on this route. However, Certificate No. MC–69526 expressly restricts service to and from Las Vegas "to traffic moving to or from points other than those in California * * *."

Except for the restriction just stated with respect to Las Vegas, unrestricted service is authorized to and from all intermediate points in California, Arizona and Utah, and to and from all intermediate points in Nevada between Las Vegas and the Nevada-Arizona state line.

Service is also authorized to and from off-route points in Nevada within ten miles of Las Vegas and within ten miles of the specified route between Las Vegas and the Nevada-Arizona state line.

The separate municipality of North Las Vegas, located to the northeast and within two miles of the city limits of Las Vegas, is an intermediate point which plaintiff is authorized to serve without restriction as to origin or destination of freight.

Plaintiff maintains a terminal at North Las Vegas; none at Las Vegas. In 1943, pursuant to authority granted by the Commission, plaintiff purchased the rights of one Griffin to operate an irregular-route service described in presently-existing Certificate M.C.C. 69526, Sub. 10, as "between Las Vegas, Nev., on the one hand, and on the other, points and places in Nevada within 75 miles of Las Vegas." See Arrowhead Freight Lines—Purchase—Griffin, 39 M.C.C. 455 (1943).

On August 15, 1949, Fleetlines, Inc., intervenor here, filed with the Commission a complaint against Arrowhead Freight Lines, Ltd., plaintiff here, under § 204(c) of the Interstate Commerce Act, 49 U.S.C.A. § 304(c), alleging that Arrowhead "is performing transportation between points in California, such as Los Angeles, on the one hand, and points in Nevada, such as Las Vegas * * * on the other, not authorized by the certificate * * * and * * * has converted certain of its authorized irregular-route operations into unauthorized regular-route service."

As authorized by § 205(a) of the Act, 49 U.S.C.A. § 305(a), the complaint was heard by a Joint Board, which recommended to the Commission a finding that Arrowhead was engaged in unauthorized operations. Exceptions to the report of the Joint Board were filed and, on April 8, 1952, the Commission, Division 5, 49 U.S.C.A. § 17, filed its report and entered the order under review. See Fleetlines, Inc. v. Arrowhead Freight Lines, Ltd., 54 M.C.C. 279 (1952).

Arrowhead thereafter filed a petition for reconsideration which was granted as to service to and from California points and Nevada points other than Las Vegas, and in other respects denied. —— M.C.C. —— (1952). A second petition for reconsideration was denied on Dec. 29, 1952. —— M.C.C. —— (1952).

This suit to annul the Commission's order of April 8, 1952 followed, and the effective date of compliance by Arrowhead has been postponed by the Commission pending hearing and determination of this action.

Upon trial, the entire record of the proceeding before the Commission was received in evidence, and the case was then argued and submitted for decision. Hence the challenged order can be judged, as all orders of the Commission are entitled to be judged, by "the report, read as a whole", United States v. Louisiana, 1933, 290 U.S. 70, 80, 54 S.Ct. 28, 33, 78 L.Ed. 181, and by "the record as a whole out of which the report arose."

City of Yonkers v. United States, 1944, 320 U.S. 685, 695, 64 S.Ct. 327, 88 L.Ed. 400.

The service here in question is described in the Commission's report:

"As of the date of the hearing * * * [Arrowhead] was engaged in transporting freight daily between Los Angeles and Las Vegas, through its terminal at North Las Vegas, by tacking its regular and irregular-route authorities at the latter point. Also shipments, principally in less than truckloads, were being transported by * * * [Arrowhead] from California points to other points in Nevada, such as Boulder City and Henderson. Such shipments have been handled through the North Las Vegas terminal. Traffic from California to all these Nevada points was moved to North Las Vegas in one or more line-haul units each day, and there generally unloaded on * * * [Arrowhead's] dock. * * * Deliveries of straight truckloads to any of the points named were accomplished with the line-haul units; however, the unit in all instances proceeded first to the terminal at North Las Vegas. Where a number of smaller shipments were destined to any particular Nevada point, they were unloaded directly from the line-haul unit into a smaller delivery truck. All deliveries within Las Vegas customarily were performed with one delivery truck and driver. From one to five trucks daily, except Monday, were required to complete delivery of shipments from California to Las Vegas, Henderson, and Boulder City. * * * Outbound freight destined to points in California is picked up, if possible, in the same unit in which deliveries are made.

"[Arrowhead's] * * * line-haul unit carrying freight from Los Angeles destined to the three Nevada points named, generally arrives at the North Las Vegas terminal at 6 a. m., and leaves on the return trip to Los Angeles about 9:30 p. m., of the same day, loaded with traffic from these points for destinations in California. Less-than-truckload shipments destined to California points are picked up daily * * * at the Nevada

points specified * * *. [Arrowhead] customarily has traversed two streets in operations from North Las Vegas to Las Vegas. * * *

"A daily overnight service from Los Angeles to Las Vegas has been advertised by * * * [Arrowhead] in the Las Vegas newspapers. Consignees in Las Vegas have been regularly solicited * * * for their shipments originating in California, and have been provided with printed routing forms, specifying routing over * * * [Arrowhead's] line, which may be attached to purchase orders sent to the consignors of the shipments in Los Angeles. The shippers or receivers at either of the three principal Nevada points named usually are accorded the time they specify for the pickup or delivery of their shipments * * * if within normal business hours." 54 M.C.C. at 281–282.

The Commission's report next discusses Arrowhead's contention "that by combining its regular and irregular-route authorities at North Las Vegas it is authorized to render service between California points and Las Vegas," and proceeds:

"The right of a motor common carrier to tack separate grants of authorities is well settled regardless of whether the authorities involve regular routes, irregular routes, or a combination of both. The essential requirements in such instances are (1) that there must be a point of service common to both authorities; (2) that the physical operation actually must be rendered through such common-point gateway; and (3) that the character of the authorized service (either regular—or irregular—route) under each authority, must be strictly preserved.

"Unless a certificate is restricted against the combining of the rights described therein with the authority already held by a motor common carrier, a single grant of authority may be combined with other similar unrestricted authority held by the same carrier provided, of course, that the essential requirements outlined above are strictly observed * * *. Neither of * * * [Arrowhead's] certificates is restricted against tacking. We conclude that * * * [Arrowhead] may combine or tack the separate grants of authority in its grandfather certificate and in its sub-10 certificate and perform through service between its authorized California points and Las Vegas through North Las Vegas as a gateway provided that the separate regular and irregular-route character of the authorized service under each certificate is strictly preserved." 54 M.C.C. at 285.

Discussing Arrowhead's contention that its service to and from Las Vegas is authorized as a collection or delivery service, 49 U.S.C.A. § 302(c), the report states:

"The service performed * * * between North Las Vegas and Las Vegas in connection with traffic moving to and from California points clearly is not a bona fide collection and delivery service. A bona fide collection and delivery service cannot stand alone but must be *incidental* to a line-haul movement and, of necessity, the points served in that bona fide collection and delivery service must be points authorized to be served in line-haul movement. Defendant does not hold authority to serve Las Vegas in connection with its California-North Las Vegas authorized regular-route line-haul operation and, of course, cannot extend its regular-route operations to Las Vegas (an unauthorized point) under the guise of a collection and delivery service." 54 M.C.C. at 286.

The report concludes:

"* * * When * * * operations between North Las Vegas and Las Vegas above described are analyzed they are patently of such a character as to compel the conclusion that * * * [Arrowhead] is conducting a regular-route operation between these points. * * * We conclude, therefore, that the California-Las Vegas operations * * * have been unauthorized.

"We find that * * * [Arrowhead] may combine or tack the separate grants

of authority in certificate No. MC–69526 and in certificate No. MC–69526 (Sub-No. 10) and perform through service between Las Vegas, Nev., and authorized California points through North Las Vegas, Nev., as a gateway, provided that the separate character of the service authorized by each of these certificates is strictly preserved." 54 M.C.C. at 287.

Applying previously-approved criteria to distinguish between "regular" and "irregular"-route operations, the Commission found from the evidence that Arrowhead is conducting a "regular"-route operation between the municipality of North Las Vegas and Las Vegas, and entered the cease and desist order here under review. See Transportation Activities, Brady Transfer & Storage Co., 47 M.C.C. 23 (1947); Brady Transfer & Storage Co. v. United States, D.C.S.D. Iowa, 1948, 80 F.Supp. 110, affirmed per curiam, 1948, 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418.

■ Tested by the evidence in the record and the standard applied by the Commission, this finding is not arbitrary or capricious, cf. United States v. Carmack, 1946, 329 U.S. 230, 243–244, 67 S.Ct. 252, 91 L.Ed. 209; there is rational basis for the administrative conclusion. Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 286, 287, 54 S.Ct. 692, 78 L.Ed. 1260.

■ It is not disputed that the Griffin authority purchased by Arrowhead is an "irregular"-route authority. 49 U.S.C.A. § 304(b); cf. United States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; United States v. Maher, 1939, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162. Therefore, authorization for service found by the Commission to constitute a "regular"-route operation between North Las Vegas and Las Vegas cannot be found under that certificate. Cf. Falwell v. United States, D.C.W.D.Va.1946, 69 F.Supp. 71, affirmed per curiam, 1947, 330 U.S. 807, 67 S.Ct. 1087, 91 L.Ed. 1264.

Even so, urges Arrowhead, the decision of the Commission in the Sixth Supplemental Report in Ex parte No. MC–37, Commercial Zones and Terminal Areas, 54 M.C.C. 21 (1952), is a source of authority.

Briefly stated, the contention is that Las Vegas, under the decision of the Commission just cited, must be held to be located within the "terminal area" of North Las Vegas, and thus the service in question here falls within the exempting provisions of § 202(c) of the Act, 49 U.S.C.A. § 302(c), applicable "to transportation by motor vehicle by a carrier * * * incidental to transportation or service subject to [the Act] * * * in the performance within terminal areas of transfer, collection, or delivery services * * *." 49 U.S.C.A. § 302(c).

The "Terminal Areas" decision, Ex parte No. MC–37, supra, upon which Arrowhead relies, declares that "transportation * * * in the performance within terminal areas of * * * collection or delivery services" within the just-quoted provisions of § 202(c), 49 U.S.C.A. § 302(c), "means only * * * intracity * * * transportation performed in the picking up and gathering together at origin, or in the distribution at destination, of less-than-truckload * * * shipments * * * prior or subsequent to an intercity * * * line-haul movement therefor and as an incident to such intercity * * * line-haul movement." See Id. 54 M.C.C. at 60.

Further that "the terminal area of any line-haul carrier * * * at any particular point which it serves is that area within which it performs bona fide collection, delivery, or transfer service." See Id. 54 M.C.C. at 61. "However," the decision cautions, "in the case of carriers required to hold operating authority from this Commission, such services cannot lawfully be performed to or from any point which the carrier is not authorized to serve. Accordingly in the case of motor carriers * * * we must add the further condition that their terminal area may not at any point extend beyond the particular carrier's operating authority." See Id. 54 M.C.C. at 61.

Thus it is clear, as the Commission's report points out, that an exempted "collection or delivery service" cannot stand alone, but must be performed "as an incident" to an authorized line-haul movement.

Furthermore, as was said in Ex parte No. MC–37, supra, "such services cannot lawfully be performed to or from any point which the carrier is not authorized to serve." See Id. 54 M.C.C. at 61.

We have already noted that Arrowhead is authorized under its "regular"-route, "grandfather" certificate to serve both Las Vegas and North Las Vegas, but service to Las Vegas is expressly "restricted to traffic moving to or from points other than those in California."

Hence Arrowhead, "as an incident" to authorized line-haul movement between Los Angeles Harbor and Ogden, Utah, may serve Las Vegas with an exempted "collection or delivery service" in connection with all traffic except that "moving to or from points other than those in California."

But traffic, other than that "moving to or from points other than those in California," is not in controversy in the proceeding at bar, since the complaint upon which the order under review is based only charges Arrowhead with unauthorized "transportation between points in California, such as Los Angeles * * * and points in Nevada, such as Las Vegas * * *."

For the reasons stated in the report of the Commission, Arrowhead is not authorized under the "grandfather" certificate to serve Las Vegas with an exempted "collection or delivery service" in connection with traffic "moving to or from * * * points in California," since this service cannot be rendered "as an incident" to authorized-line-haul movement between points in California and Las Vegas, in view of the quoted-restriction in Arrowhead's certificate plainly forbidding service to Las Vegas as to traffic "moving to or from points * * * in California." See Noble v. United States, 1943, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277.

Since "regular"-route service by Arrowhead to Las Vegas from California points is not authorized by either the "regular"-route, "grandfather" certificate or the "irregular"-route, Griffin certificate, it follows that authorization cannot be found by combining the two certificates; the right to tack separate grants of authority being subject to the condition "that the character of the authorized service (either regular—or irregular-route) under each authority, must be strictly observed." 54 M.C.C. at 285.

Accordingly the Commission concluded that while Arrowhead "may combine or tack the separate grants of authority in ["grandfather"] certificate No. MC–69526 and in [Griffin] certificate No. MC–69526 (Sub-No. 10) and perform through service between Las Vegas, Nev., and authorized California points through North Las Vegas, Nev., as a gateway, provided that the separate character of the service authorized by each of these certificates is strictly preserved * * * in its past operations [Arrowhead] has been conducting regular-route operations * * * between North Las Vegas and Las Vegas * * * not authorized by its certificate No. MC–69526 (Sub-No. 10) * * *." 54 M.C.C. at 285–287.

"To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases, is beyond our province." Virginian R. Co. v. United States, 1926, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463; see also Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; United States v. Pierce Auto Freight Lines, 1946, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821; Rochester Tel. Corp. v. United States, 1939, 307 U.S. 125, 139–140, 59 S.Ct. 754, 83 L.Ed. 1147; I. C. C. v. Union Pac. R. R. Co., 1912, 222 U.S. 541, 547–548, 32 S.Ct. 108, 56 L.Ed. 308.

"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, supra, 292 U.S. at pages 286–287, 54 S.Ct. 692, at page 694.

Clearly there is rational basis for the Commission's conclusions in the proceeding here. The proceeding was conducted within the authority conferred by the Interstate Commerce Act, and the order under review is not void for indefiniteness.

In so holding we construe the order in effect to incorporate by reference the Commission's previously-established criteria for distinguishing between "regular" and "irregular"-route operations. See Classification of Motor Carriers of Property, 2 M.C.C. 703 (1937); Transportation Activities, Brady Transfer & Storage Co., supra, 47 M.C.C. 23, 43–56.

And we assume that the Commission here intends, without expressly so stating, to disavow, as in the Brady case, "any intent to curtail the volume" [80 F. Supp. 113] of Arrowhead's irregular-route business between North Las Vegas and Las Vegas, and "any intent or power to curtail the number of trips" which Arrowhead may desire to make between North Las Vegas and Las Vegas under the irregular-route certificate. See Brady Transfer & Storage Co. v. United States, supra, 80 F.Supp. at page 113 et seq. affirmed per curiam, 1948, 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418.

Analysis of the report and order thus construed discloses the pith of the Commission's command to be that Arrowhead cease and desist from representing or holding out, as to traffic "moving to or from points in California," that the irregular route from North Las Vegas to Las Vegas is part of the regular route from California points to North Las Vegas, or that Arrowhead's irregular-route service for California traffic from North Las Vegas to Las Vegas is in fact a regular-route service.

Denial of Arrowhead's petitions for reconsideration or for a further hearing embraced matters resting within the Commission's sound discretion, and no abuse of that discretion appears. United States v. Pierce Auto Freight Lines, supra, 327 U.S. at pages 534–536, 66 S.Ct. 687, 90 L.Ed. 821; I. C. C. v. Jersey City, 1944, 322 U.S. 503, 514–519, 64 S. Ct. 1129, 88 L.Ed. 1420.

This action to annul the Commission's order of April 8, 1952 must therefore be dismissed.

Solicitors for defendants will lodge with the Clerk findings of fact, conclusions of law and judgment of dismissal pursuant to local rule 7 within ten days.