### ACME FAST FREIGHT, Inc. v. UNITED STATES et al.
### Civ. A. No. 1526.

United States District Court
D. Delaware.
Oct. 16, 1953.

John Van Brunt, Killoran & Van Brunt, Wilmington, Del., and Robert E. Quirk and James L. Givan, Washington, D. C., for plaintiff and intervener.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., and Stanley N. Barnes, Asst. Atty. Gen., and James E. Kilday and Charles S. Sullivan, Jr., Sp. Assts. to the Atty. Gen. for the United States.

Edward M. Reidy and H. Neil Garson, Washington, D. C., for Interstate Commerce Commission.

Before BIGGS, Circuit Judge, LEAHY, Chief Judge, and RODNEY, District Judge.

BIGGS, Circuit Judge.

This is an action brought by freight forwarders[1] subject to Part IV of the Interstate Commerce Act to set aside an order of the Interstate Commerce Commission which granted an amended permit to Arrow Marine Forwarders, a partnership.

Arrow's original permit to act as a freight forwarder was granted by the Commission in 1947. This permit authorized Arrow to act as a freight forwarder of commodities generally between certain states on or near the eastern seaboard[2] to points in Arizona, California, Nevada, Oregon and Washington "over routes embracing common carriers by water through the Panama Canal". In

1. In Chicago, Milwaukee, St. Paul & Pacific Railroad Company v. Acme Fast Freight, Inc. (one of the present plaintiffs), Mr. Chief Justice Vinson defined "freight forwarders", 336 U.S. 465, 467, 69 S.Ct. 692, 693, 93 L.Ed. 817 as follows: "Freight forwarders consolidate less than carload freight into carloads for shipment by rail, truck, or water. Their charges approximate rail less than carload rates; their expenses and profits are derived from the spread between the carload and l. c. l. rates. Forwarders are utilized by l. c. l. shippers because of the speed and efficiency with which they handle shipments, the unity of responsibility obtained, and certain services which forwarders make available."

Mr. Chief Justice Vinson also stated that in 1942 Congress enacted what is popularly known as the "Freight Forwarder Act", this legislation appearing as Part IV of the Interstate Commerce Act, 56 Stat. 284, 49 U.S.C.A. § 1001 et seq.

2. New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Maryland, Delaware, Virginia, West Virginia, North Carolina, South Carolina, and Ohio. In 1949 Arrow's permit was amended to add Alabama, Florida, Georgia, Kentucky, Louisiana, Maine, Mississippi, Tennessee, and Texas, and to authorize west-to-east shipments among the authorized states.

the application which gave rise to the instant proceeding, Arrow sought to drop the quoted words from its permit in order to authorize it to use any means of transportation which it chose.

In its application, under "Title 2" thereof, "Proposed Services", Arrow stated that it proposes "* * * to move certain * * * consolidated shipments via steamship to the port of Houston, Texas, and from that point arrange for distribution of such consolidated shipments to ultimate consignees located at points in the states of Arizona, California and Nevada". But Arrow's application then went on to say, "It is also proposed to move certain of the consolidated shipments via rail carload from assembling points[3] to Los Angeles, San Francisco, Portland and Seattle, at which points arrangements will be made for distribution of such consolidated shipments to ultimate consignees located at points in the states of Arizona, California, Nevada, Oregon and Washington." We read these phrases in the application as meaning that Arrow desires to have authority to forward via any means of transportation, viz., rail, motor, or water, from the east to the west coasts.

At the hearing before the Examiner, Arrow proved that it sought the amended permit because its operations via the Panama Canal to west coast ports had been repeatedly interrupted by west coast maritime strikes. Arrow's witnesses stated that Arrow intended to remain primarily a forwarder of freight by water through the Panama Canal and sought the amendment to its certificate only to give it alternate routes if such routes should be required by circumstances. Arrow's witnesses stated in effect that it does not intend to engage in business "strictly (as a) rail forwarder" and that it is its purpose "to use the fa-cilities of the steamer, trucks and rails, (sic) which service is not the same as the rail services." On cross-examination Arrow's witnesses admitted that the amended certificate would authorize it to forward freight from east coast to west coast via rail or motor truck or by a combination of both, but Arrow's witnesses made it clear that Arrow does not presently intend to solicit freight for forwarding in these ways.

The decision of the Commission was that Arrow should have the full authority it requested in its application for the amended certificate. The final order of the Commission grants Arrow authority to forward freight generally in the authorized geographic area, without restriction as to the means of transportation used. It is this decision which plaintiffs, as competing freight forwarders, have brought here for review in accordance with 28 U.S.C. § 1336.

The governing statute, as we have indicated, is Part IV of the Interstate Commerce Act, viz., as we have indicated, the Freight Forwarders Act, 49 U.S.C.A. § 1001 et seq. Section 1010(c) set out below [4] prescribes the requirements for a permit. The two statutory findings which the Commission must make before it may grant a permit to a freight forwarder are that the forwarder is "ready, able, and willing properly to perform the service proposed" and that the application "is or will be consistent with the public interest and the national transportation policy". The statute makes no distinction between the findings necessary for an original permit and those required for an amended permit.

The scope of review by this court of orders of the Commission is limited. United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; I. C. C. v. Union Pacific Railroad, 1912, 222 U.S.

---

3. Arrow's main assembly points are Boston, New York and Philadelphia.

4. "The Commission shall issue a permit to any qualified applicant therefor * * * if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and that the proposed service * * * is or will be consistent with the public interest and the national transportation policy declared in the Interstate Commerce Act; otherwise such application shall be denied. * * *"

541, 32 S.Ct. 108, 56 L.Ed. 308. Judicial review of Commission orders is now governed by the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. See Riss & Co. v. United States, D.C.W.D.Mo., 96 F.Supp. 452, reversed 1951, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345.

■ Adhering to the terms of the Administrative Procedure Act, we have decided on consideration of the entire record that the findings and order of the Commission in the instant case are in accordance with law, are within the statutory jurisdiction of the Commission, and are supported by substantial evidence. Specifically we find, upon review, that the subordinate findings of the Commission and its required statutory findings have sufficient basis in law and in fact.

The strongest attack which the plaintiffs make on the Commission's order granting the amended certificate is that Arrow has received more authority from the Commission than it really wants or intends to use. The Commission's decision, as we have said, permits Arrow to employ any means of transportation it desires in its freight forwarding activities. Arrow is presently a marine forwarder exclusively, and according to its testimony it intends to remain so insofar as conditions will permit. The plaintiffs, who apparently forward their transcontinental freight exclusively by overland routes, are concerned because Arrow will now be able to compete with them for overland business. The plain-

tiffs assert that Arrow has not made out a case to be permitted to use other means of transportation than water and that therefore the Commission's decision should be set aside.

■ But this is not a case of an original application for authority to forward freight across the continent by rail or motor truck. It may be that the present record could not support an original permit of the scope granted Arrow by the Commission in the proceeding under review, though we do not decide such an issue which is not before us. The Commission in the exercise of its expert judgment has decided that Arrow should be permitted to remain in business and in order to enable it to achieve that end the Commission has granted Arrow authority to use the alternate routes of which the plaintiffs complain. We must decide this case on its particular facts. The facts in the present proceeding are that Arrow is seeking to remove the present restriction which limits it to forwarding freight by water via the Panama Canal because its business has been disrupted, as we have said, by west coast labor disputes. It is our conclusion that if the alternate form of transportation which Arrow seeks to have authorized can be justified for this reason, the fact that the authority granted is broad enough to allow Arrow to ship completely overland, and so compete with the plaintiffs, is not such a fundamental element as will require rejection of the Commission's judgment.[5]

5. The effect on competitors of granting a new or amended permit in freight forwarding cases was not regarded by Congress as being as weighty or serious a matter as if the operative field were carriage by motor carrier or by water carrier. Section 410(d) of the Freight Forwarders Act, 49 U.S.C.A. § 1010(d), provides that the " * * * Commission shall not deny authority to engage in * * * the proposed service covered by any application * * * solely on the ground that such service will be in competition with the service * * * performed by any other freight forwarder * * *." Parts II and III of the Interstate Commerce Act, dealing with water carriers and motor carriers, have no similar provision. The statutory requirements for the issuance of certificates to water carriers or motor carriers require a finding by the Commission that the service " * * * is or will be required by the present or future public convenience or necessity * * *." See 49 U.S.C.A. §§ 307(a) and 909(c). The phrase "public convenience and necessity" has been held to require the Commission to consider the effects of a proposed permit on competing carriers when the permit is for an alternate route. Clarke v. United States, D.C.D.C.1951, 101 F.Supp. 587. We find a significant liberalizing of the Commission's power

The Commission in the exercise of its expert judgment has decided that the service which Arrow affords, viz., forwarding freight by water through the Panama Canal, is a service which shippers need and which should be continued. The Commission has concluded that permitting Arrow to use other means of transportation than water carriers will assist Arrow in the consummation of its objectives. Under these circumstances the Commission's decision to grant Arrow relief by authorizing alternate means of transportation is clearly justified. The underlying statutory requirements that the amended permit be "consistent with the public interest and the national transportation policy" have been satisfied.

But the applicable statute also requires that the Commission find that Arrow be "ready, able, and willing" to exercise the means of transportation authorized by the Commission. The phrase "fit, willing, and able" is the comparable statutory requirement in motor carrier and water carrier applications. See 49 U.S.C.A. §§ 307(a) and 909(c). The statutory language has been interpreted in two cases. See Chicago, St. Paul, Minneapolis & Omaha Railway Co. v. United States, D. C., 50 F.Supp. 249, 253, affirmed 1944, 322 U.S. 1, 64 S.Ct. 842, 88 L.Ed. 1093, and Newtex S. S. Corp v. United States, D.C.S.D.N.Y., 107 F.Supp. 388, 390, affirmed 1952, 344 U.S. 901, 73 S.Ct. 285. It appears from the decisions that the phrase "fit, willing, and able" permits much flexibility in interpretation. It is argued that Arrow does not intend to make use of the full authority granted to it by the amended certificate; that Arrow intends to make use of rail or truck transportation only as possible alternatives if its all water route to the west is disrupted; and that therefore, Arrow is not "willing" to undertake the service granted it by the amended certificate. Such an argument seems largely a play on words. To the extent that rail or motor vehicle facilities are required, Arrow can make use of them. If freight is to be forwarded by rail from east coast to west coast, Arrow can do this. If service based on truck transportation is required, Arrow can employ trucks and will be willing to employ them. If forwarding service based on water transportation and on truck or rail transportation is necessary to maintain its business Arrow can and will make use of such service. Under the circumstances the objection that Arrow is not able and willing to exercise the franchise conferred upon it by the amended certificate is largely a technical one.

It is the Commission's policy not to restrict any freight forwarder applicant to specific methods of handling transportation unless the applicant has expressly requested the restriction.[6] We note that counsel for the plaintiffs stipulated at the hearing before the Commission's Examiner that the plaintiffs themselves are not restricted in the terms of their permit to overland routes alone but are authorized to forward via rail, motor or water carrier. Counsel for the defendants stated, and the statement is not denied, that of ninety-six outstanding permits today in the freight forwarder field only two are restricted to particular means of transportation and one of these was Arrow prior to the amendment of its certificate. As we have said, the Commission's past practice sanctions liberality in permitting Arrow to use all means of transportation.

■ The plaintiffs complain that Arrow introduced no evidence that any shippers desired the proposed alternate routes, either by water via Houston or overland. While shipper testimony is ordinarily introduced to support an ap-

in the fact that a freight forwarder permit is not based upon public convenience and necessity.

The Commission has consistently followed a liberal policy in granting freight forwarder permits, overruling objections that too much competition would result.

See Lifschultz Fast Freight Extension—West and Midwest, 265 I.C.C. 431 (1948).

6. The restriction in Arrow's original certificate was at Arrow's request.

plication for new or extended service, there is no absolute requirement that such evidence be in the record in order to sustain a Commission finding. See United States v. Chicago Heights Trucking Co., 1940, 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243. In the instant case the new routes being applied for are intended as alternatives, to be employed in the case of disruptions of normal service. Under these circumstances we do not believe that shipper testimony is required.

The plaintiffs also point out that Arrow has a bad financial record. It has lost money almost continuously in its five years of operation. Ordinarily an applicant should show that it is financially sound before it can be given a permit to operate over new routes. See Williams Freight Forwarder Application, 260 I.C.C. 586 (1945). But where, as here, the applicant seeks the new route precisely because the new route will enable it to operate on a sound financial basis, the Commission's conclusion is supportable on the practical ground that Arrow has continued business despite the fact that it has been operating at a loss. The amendment will aid its operations. We find that the necessary evidence exists here.

Other points raised by the plaintiffs do not require discussion.

The complaint will be dismissed for want of equity. An order may be submitted.

Findings of fact and conclusions of law will be filed concurrently with this opinion.