**ACME FAST FREIGHT, Inc., et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

**Civ. A. No. 1763.**

United States District Court
D. Delaware.

Sept. 28, 1956.

---

James L. Latchum (of Berl, Potter & Anderson), Wilmington, Del., and Harry C. Ames (of Ames, Hill & Ames), Washington, D. C., for plaintiffs.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., and John H. D. Wig-

ger, Washington, D. C., for the United States.

Isaac K. Hay, Washington, D. C., for Interstate Commerce Commission.

Daniel O. Hastings and Russell J. Willard, Jr. (of Hastings, Lynch & Taylor), Wilmington, Del., S. S. Eisen, New York City, and Raoul Berger, Washington, D. C., for Republic Carloading Co., intervenor.

Before BIGGS, Circuit Judge, LEAHY, Chief Judge, and RODNEY, District Judge.

LEAHY, Chief Judge.

## Findings of Fact

This action is before a three-judge court [1] whereby plaintiffs seek an interlocutory injunction and an order setting aside as void an order of the Interstate Commerce Commission, Division 4,[2] and pending final adjudication to enter the interlocutory injunction against the enforcement of the Commission's order of May 24, 1955.[3]

On June 1, 1953, Republic Carloading and Distributing Co., Inc. (applicant) sought permission from the Interstate Commerce Commission under § 410 of the Interstate Commerce Act[4] for a revised permit which would authorize applicant to extend its operations as a freight-forwarder in the transportation of general commodities between all points in the United States, except to the extent it was already authorized to conduct such operations and held a permit as a freight-forwarder of general commodities 1. from points in Illinois, Indiana, Iowa, Kansas, Louisiana, Michigan, Minnesota, Mississippi, · Missouri, Texas, and Wisconsin, to points in the United States east and north of and including Virginia, West Virginia, and Pennsylvania; 2. from points in the destination territory specified in 1. to all other points in the United States except points in Georgia, Kentucky, Montana, Nevada, North Carolina, South Carolina, South Dakota, and Tennessee; 3. from points in the destination territory specified in 1., except points in Virginia and West Virginia, to points in Georgia; 4. from points in Kentucky, Ohio, Indiana, Michigan, Illinois, Wisconsin, Minnesota, Iowa and Missouri to points in Alabama, Florida, Georgia, Mississippi, Louisiana, Arkansas, Oklahoma, Texas, New Mexico, Arizona, Utah, Wyoming, Idaho, California, Oregon, and Washington; 5. from points in Ohio, Indiana, Illinois, Michigan, and Wisconsin to points in Iowa, Minnesota, and Colorado and 6. from points in. Tennessee to points in Louisiana, Texas, Colorado, Arizona, Utah, California, Idaho, Oregon and Washington.

Hearings were held in several cities on the application. Certain freight-forwarders including plaintiffs were opposed to the application. On July 1, 1954, the Commission's Examiner filed his proposed report. He recommended the application be granted in part and denied in part. Exceptions were taken by the applicant to which plaintiff (protestant) filed replies.

On May 24, 1955, the Commission, Division 4, filed its report. 285 ICC 641. It concluded with this master finding:

"We find that service by applicant as a freight forwarder of commodities generally, in interstate commerce, between all points in the United States, other than those it is presently authorized to serve, and except that no service is authorized between points in California, on the one hand, and points in Idaho, Oregon, and Washington, on the other, would be consistent with the public interest and the national transportation policy; that it is ready, able and willing properly to perform such

---

1. Convened under 28 U.S.C. §§ 2284(1) and 2325.

2. Entered on May 24, 1955, Docket No. FF–148 (Sub-No. 5) Republic Carload- ·

ing and Distributing Co., Inc., Extension-Nationwide.

3. See Note 2, supra.

4. 49 U.S.C.A. § 1010.

service; and that an amended permit should be issued authorizing applicant to perform such service in addition to the service presently authorized. In all other respects the application will be denied."

On June 30, 1955, plaintiffs filed a petition for reconsideration. It was denied. On October 17, 1955, the entire Commission after considering the record of the proceedings denied the petitions.

## Discussion

This suit seeks to enjoin an order of the Interstate Commerce Commission in the matter of Republic Carloading & Distributing Co., Inc., Extension-Nationwide, Docket No. FF–164 (Sub–No. 5). The Commission, Division 4, found applicant's services as a freight-forwarder of general commodities "would be consistent with the public interest and the national transportation policy" and that applicant "is ready, able and willing properly to perform such service." The order of Division 4 was affirmed by the Commission.

There are two questions presented by this case: 1. Are the Commission's findings supported by substantial evidence; and 2. did the Commission correctly construe § 410 of the Interstate Commerce Act. 49 U.S.C.A. § 1010(d). Plaintiffs say the Commission acted contrary to plaintiffs' evidence that the new authority would result in impairment of the operations of existing forwarders; and the Commission has misconstrued the statute by resorting to § 410(d) "to make mandatory the plain provisions of paragraph (c) of said section."

 1. In approaching the problem as to whether the Commission's findings are supported by substantial evidence, certain guides are available. "Judicial review of the findings of fact and the expert judgments of the Interstate Commerce Commission where the Commission acts within its statutory authority is extremely limited." [5] "Unless in some specific respect there has been prejudicial departure from the requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." [6]

Complaint is not made there is *no evidence* to support the findings. In fact, applicant's witnesses outnumbered plaintiffs'. The real complaint is plaintiffs challenge the inferences drawn from the facts by the Commission. In short, plaintiffs think the evaluation of the applicant's evidence and the rejection of their own evidence was error.

 But, again, this court's function in matters of this nature is not to substitute its independent judgment for that of the Commission,[7] for the Commission's discretion is to draw its conclusions from

---

5. Interstate Commerce Commission v. Mechling, 330 U.S. 567, 574, 67 S.Ct. 894, 898, 91 L.Ed. 1102.

6. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 698, 90 L.Ed. 821. And see Johnston Seed Co. v. United States, 10 Cir., 191 F.2d 228, 231.

 In American Trucking Ass'ns v. United States, D.C., 101 F.Supp. 710, 726, it was suggested: "there is a presumption that the Commission has properly performed its official duties and this presumption supports its acts in the absence of clear evidence to the contrary." And see,

United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131.

7. "* * * Objections which petitioners proffer that go to the soundness of the reasoning by which the Commission reached its conclusion * * * that inferences drawn from the evidence were unwarranted, are matters which we are not authorized to consider in this review proceeding. Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941." Wilson v. United States, D.C., 114 F.Supp. 814, 818.

all the circumstances which occur in specific instances.[8]

Hence, we can not disagree with the inferences from the evidence made by the Commission. There can be no argument of lack of substantial evidence for such a complaint is foreclosed by the record. In passing, we note there have been other proceedings in which plaintiffs opposed applications only to have the event prove not only that there was sufficient traffic for the applicant but that applicant's activities generated new business so as to even benefit the plaintiffs in the case at bar. See Republic Carloading and Distributing Co., Inc., Extension-Southeast, 285 I.C.C. 127. Thus, we reject plaintiffs' argument that applicant can only obtain traffic by diverting it from "existing forwarders". There were many witnesses who testified they had shipments moving within territories embraced by the present application as to which no freight forwarder is available for the purpose of using applicant's service. In fact, witnesses testified to support the present application that they currently moved their product in volume lots to warehouses for subsequent less-than-carload distribution and they were willing to use applicant's services to displace such costly warehousing. Such new business would not divert that traffic from existing forwarder services.[9] Ninety-nine shippers and receivers of freight testified at the San Francisco and Seattle hearings they were a mere sampling of a larger number of shippers and receivers of freight involved in the present application. Clearly Division 4 did not err when it evaluated the testimony of these receivers and shippers as representative of the needs of the shipping public, for it recognized that a large potential pool of traffic is present for freight-forwarding operations.

[4] In Acme Fast Freight v. United States, D.C.Del., 116 F.Supp. 97, 101 (per Biggs, C. J.), this court recognized that consistency with the public interest is satisfied by a showing shippers need the proposed service. And in the case at bar, the Commission evaluated all evidence and held: "The testimony of the many supporters of the application and the evidence of record indicates that the public interest and the national transportation policy would be served by a grant of the proposed authority * * * ".

8. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051.

As stated in Arrowhead Freight Lines v. United States, D.C.S.D.Cal., 115 F. Supp. 537, 544:

" 'To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached * * * is beyond our province.' Virginian R. Co. v. United States, 1926, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463 * * *."

9. Existing forwarders do not now afford the full measure of services needed and required because they are (1) too slow (R. pp. 79, 83, 88, 110, 111, 150, 159, 194, 213, 250, 259, 264, 295, 350, 353, 355, 362, 382, 399, 409–U, 432, 474, 726, 735, 747, 751, 758, 784, 795, 804, 842, 853, 872, 920, 957, 986, 995, 1073, 1321, 1345, 1346, 1359, 1392, 1403, 1467, 1469, 1572, 1576, 1975, 2052, 2054); (2) are so restricted that they cannot be used (R. pp. 1110, 1123, 1457, 2098); (3) cause excessive loss and damage and otherwise cause claim difficulties (R. pp. 150, 382, 394, 407, 414, 437, 443, 719, 726, 728, 940, 1382, 2051, 2099); (4) provide such poor tracing services as to make their use impractical (R. pp. 88, 134, 150, 153, 275, 282, 344, 382, 390, 407, 414, 457, 1392, 1467, 1887, 1975); (5) provide inadequate and unsatisfactory pick-up and delivery services, failing to meet shipping and receiving requirements (R. pp. 119, 382, 493, 1183); (6) otherwise delay freight (R. pp. 1145, 1163); and (7) provide forwarding services that have been so unsatisfactory that many shippers either refuse to use such services or will use them only as a last resort (R. pp. 396, 415, 464, 481, 719, 728, 758, 782, 1135, 1161, 1196, 1318, 1319, 1348, 1353, 1366, 1382, 1396, 1409, 1417, 1427, 1447, 1468, 1571, 1618, 1887, 1935, 1975, 2051, 2052, 2074) and as the result thereof consignees have instructed their shippers not to use the existing forwarding services (R. pp. 213, 278, 1167, 1169, 1187, 1319, 1382, 1447, 1491, 1804).

2. We think the Commission properly construed § 410 of the Act.[10] Plaintiffs' argument is the Commission must prevent "competition" in order to protect the "public interest" under § 410(c). § 410(d), however, expressly precludes a denial of an application on that ground. We can not accept plaintiffs' interpretation of the statute. Whatever view is taken of § 410(c) in that a permit must be "consistent with the public interest and the national transportation policy", it cannot include the one fact which Congress has expressly excluded by § 410(d)—i. e., competitive consequences are not an element of consideration. In short, Congress has expressly instructed that an application shall not be denied "solely on the ground that the proposed service will be in competition" with existing service. § 410(d) deals with the *specific* while the other subsection, (c), deals with the general.[11] As we look at the statute there was to be no protection "against useless and wasteful duplication". There was to be afforded to existing services, no "virtually monopolistic rights". As to "prior operations" they were to be afforded no advantage which would place them "in any more favorable position than any new shipper". Permits were to be issued "without regard to whether the applicant would compete with existing facilities." In fact, § 410(d) was designed to insure that permits would not be denied "on the ground that the existing forwarder service was adequate". The basic thesis of Congress was the "greatest opportunity should be given to persons to go into the business." This is the unmistakable intent of § 410(d).

The relief here sought must be had, if at all, not from the courts but from Congress.[12] Plaintiffs here are asking this court to take over the legislative prerogative and to amend the statute contrary to the plain intention of Congress. Our view is the complaint should be dismissed in the instant action.

---

10. Section 410, 49 U.S.C.A. § 1010, provides:

"(c) The Commission shall issue a permit to any qualified applicant therefor, authorizing the whole or any part of the service covered by the application, if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and that the proposed service, to the extent authorized by the permit, is or will be consistent with the public interest and the national transportation policy declared in this Act; * * *.

"(d) The Commission shall not deny authority to engage in the whole or any part of the proposed service covered by any application made under this section solely on the ground that such service will be in competition with the service subject to this part performed by any other freight forwarder or freight forwarders."

11. The Appendix hereto contains a discussion of the legislative history of the statute.

12. The above has been confirmed before a sub-committee of the Senate Committee on Interstate and Foreign Commerce on behalf of the Freight Forwarders Institute (of which plaintiffs are leading members). Testimony with respect to S. 3365, which seeks "to remove the self-defeating prohibition against competitive considerations" contained in § 410 (d), was by Mr. Giles Morrow (President. and General Counsel of Freight Forwarders Institute):

"The practical effect of the foregoing provision [subsection (d)] has been virtually to eliminate competition as a factor in determining whether or not to issue a permit authorizing new or extended freight forwarder service.

* * * * *

"The Commission has felt compelled to proceed 'upon the view that the purpose of section 410(d) is to insure that. freight-forwarder applications shall not be denied, as were motor contract carrier applications, on the ground that the existing service is adequate.' (Lifschultz. Fast Freight—West and Midwest, 265. I.C.C. 428). The Supreme Court upheld the Commission in this view (Acme Fast Freight v. United States, 338 U.S. 855, 70 S.Ct. 104, 94 L.Ed. 524)." Morrow Statement, p. 6.

And he added that the Commission:

"is presently barred from denying the application on the grounds that existing forwarders are providing adequate, efficient, and economic service." Id., at p. 8.

### Conclusions of Law

1. The Commission had jurisdiction to determine the issues.

2. This Court has jurisdiction to review.

3. The findings made by the Commission, Division 4, in its report of May 24, 1955, are supported by substantial evidence of record and are legally sufficient to support its decision and all orders thereon.

4. The Commission acted within the proper range of its discretion in finding that the grant of the amended permit to the applicant to the extent set forth in the report and order, would be consistent with the public interest, and the national transportation policy, and that the applicant is ready, able and willing to perform such service.

5. The order entered by the Commission, Division 4, on May 24, 1955, granting the amended permit to the applicant is a legal and valid order.

6. The plaintiffs are not entitled to the relief sought here. The complaint in this action should be dismissed, and the prayer for interlocutory injunction is denied.

### APPENDIX

#### (Legislative History)

The intent of the statute is clear from the legislative history. With the prior legislation respecting railroads, water and motor carriers before it, Congress weighed two prior provisions, namely "grandfather" rights and the "public convenience and necessity" conditions, and discarded them.

The House Committee rejected a "grandfather" clause for the reason that (in plaintiffs' words)

"Since 'grandfather' clauses are inherently bottomed upon the proposition that the existing system of transportation should be protected against a useless and wasteful duplication of the facilities of transpor-

tation, no such protection was necessary in the case of forwarders which do not own such facilities but utilize those of other carriers, * * * (H.Rept. 3684)".[1]

Chairman Lea said:

"Because of the comparatively few companies which were engaged in forwarding operations of a public character up to a few years ago, the recognition of 'grandfather rights' would have given virtually monopolistic rights to a comparatively few companies."[2]

Rep. Wolverton, the senior minority Committee member, said:

"Because, forwarders, whether large or small, are essentially shippers in their relation to the carriers, whose services they utilize, they properly should acquire no rights by reason of prior operation which would place them in any more favorable a position than any new shipper also desiring to utilize the same carrier services."[3]

As to "public convenience" provisions, Chairman Lea said:

"The primary purpose of requiring a certificate (of public convenience and necessity) as a prerequisite to operation is to protect the public from having to support improvident investments in transportation facilities. Forwarders, however, do not customarily invest any substantial amounts of capital in physical properties or facilities of transportation, but make use of such properties and facilities as may be provided by carriers subject to Part I, II, or III of the act."[4]

At another point, Chairman Lea said:
"the House bill contemplated that authority to conduct forwarding operations should be granted by the Commission to all qualified applicants. Under this type of regula-

---

1. Complaint, Ex. D, p. 17.

2. Cong.Rec. May 11, 1942, p. 4199.

3. Cong.Rec. October 23, 1941, pp. 8426–8427.

4. Cong.Rec. May 11, 1942, p. 4201.

tion it would not be necessary for an applicant to prove 'public convenience and necessity' as required by the Senate bill, but the grant of operating authority would be appropriate without regard to whether the applicant would compete with existing facilities." [5]

For such reasons, Chairman Lea, in reporting S. 210 out for consideration (H. Rept. No. 1172, 77th Cong., 1st Sess., p. 22) said:

"The Committee substitute, in section 410 contains no provision with respect to 'grandfather rights' and instead of providing for certificates of public convenience and necessity requires freight forwarders to obtain permits which are to be issued without the requirement of a showing of public convenience and necessity." [6]

Congress made the express prohibition of § 410(d) which forbids the Commission to deny authority solely on the ground that it may affect competition. As Rep. Wolverton explained:

"(b) The provision in paragraph (d) of section 410, to the effect that no application for a permit shall be denied because of the existence of other forwarder service which would be competitive, is predicated upon the essential nature of forwarder service as a shipper service, so far as the actual carriers are concerned. Without such a provision, there might be a tendency to deny legitimate operations on the ground that the existing forwarder service was adequate. The committee was of the opinion that if the advantages of freight forwarder service are as great as are claimed for it, then the

greatest opportunity should be given to persons to go into the business and to make it available to the public to the greatest extent possible." [7]

Even plaintiffs have their comment:

"Obviously any legislation looking to the encouragement of additional shippers would be completely incompatible with any idea that the existing system of regulated transportation should be given any protection from the inroads of wasteful duplication." [8]

---

5. Cong.Rec. May 11, 1942, p. 4199.

6. This court has stated, in Acme Fast Freight v. United States, D.C., 116 F. Supp. 97, 100–101, footnote 5 (per Biggs, C. J.):

"The effect on competitors of granting a new or amended permit in freight forwarding cases was not regarded by Congress as being as weighty or serious

a matter as if the operative field were carriage by motor carrier or by water carrier. * * * We find a significant liberalizing of the Commission's power in the fact that a freight forwarder permit is not based upon public convenience and necessity."

7. Cong.Rec., October 23, 1941, p. 8220.

8. Complaint, Ex.D, p. 19.