The TEXAS MEXICAN RAILWAY COMPANY et al.

v.

The UNITED STATES of America et al.

Civ. A. No. 65–B–48.

United States District Court
S. D. Texas,
Brownsville Division.

Feb. 10, 1966.

Phillip Robinson, James, Robinson & Starnes and Ewell H. Muse, Jr., Austin, Tex., Reagan Sayers and Rawlings, Sayers, Scurlock & Eidson, Fort Worth, Tex., for the carriers.

Manny H. Smith, Interstate Commerce Commission, Washington, D. C., Donald F. Turner, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., Houston, Tex., John H. D. Wigger, Dept. of Justice, Washington, D. C., Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., Paul Coyle, Washington, D. C., Homero M. Lopez, Asst. U. S. Atty., Brownsville, Tex., for Interstate Commerce Commission.

Leroy Hallman, Jr., Dallas, Tex., for defendant.

Beverly S. Simms, Washington, D. C., for the United States (Interstate Commerce Commission).

Elmore H. Borchers, Laredo, Tex., and Charles L. Ford, Austin, Tex., for Texas Mexican Railway Co.

Rollo E. Kidwell, Dallas, Tex., for East Texas Motor Freight Line.

Before THORNBERRY, Circuit Judge, and GARZA and NOEL, District Judges.

GARZA, District Judge.

This is an action before a three judge court under 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325; 49 U.S.C. §§ 17(9), 305 (g), (h); and 5 U.S.C. § 1009, to set aside a decision and order of the Interstate Commerce Commission, Division 1, of March 29, 1965, granting a certificate of public convenience and necessity to the applicant, Transportes Azteca, issued under § 207(a) of the Interstate Commerce Act, 49 U.S.C. § 307(a). This order granted a certificate authorizing operation by applicant as a motor freight carrier in foreign commerce over irregular routes of general commodities with certain exceptions between Newark, New Jersey, and Brownsville, Texas.

On November 30, 1961, applicant, a New Jersey corporation, applied for a certificate, and oral hearings were conducted by Hearing Examiner Francis A. Welch on September 13, 1962, at Newark, on February 4 and 5, 1963, at New York City, and on March 2 and 3, 1964, at San Antonio, Texas. Some twenty-nine rail

and motor carriers opposed the application, four of which withdrew their opposition after it was amended.

By decision and order of March 29, 1965, Division 1 of the Commission unanimously affirmed and adopted the report and recommended order of the examiner, and conditioned the issuance of an appropriate certificate upon compliance by applicant with the requirements of §§ 215, 217 and 221(c) of the ICC Act within ninety days after the date of service or within such additional time as may be authorized by the Commission. This order was served on April 7, 1965, and the ninety days expired on July 6, 1965. The Commission denied petitions by certain protestants asking it to find that the case involved an issue of general transportation importance and, therefore, should be reviewed by the Commission en banc.

Nine protesting rail and motor carriers filed this action on July 9, 1965, on which date this Court granted a temporary restraining order suspending the enforcement and execution of the decision and order of the Commission, Division 1. Applicant was granted leave to intervene as a defendant and its motion to dissolve the temporary restraining order was denied, after hearing.

The applicant's proposed operation originally involved the handling of traffic moving from the Northeast United States to points in Mexico by through movement in sealed trailers, in bond, with Customs clearance being obtained at interior Mexican points. Not having obtained permission from the Mexican government for the in-bond movement of trailers through the port of entry at Brownsville, however, applicant proposed to effect trailer interchange at Brownsville with a connecting Mexican motor carrier with Customs clearance being obtained at the Border. Applicant will assist shippers in the preparation of the required documents and the obtaining of necessary permits and certifications to eliminate delays in the clearance of southbound shipments. Thus on southbound traffic applicant would furnish through-trailer service from Newark to points in Mexico with interlining of the trailers and clearing of Mexican Customs at the Border. Northbound trailers would be interlined at the Border, but the examiner found no apparent obstacle to inbond service from Mexico to Newark.

The president of the applicant corporation, Bernard F. Flynn, Jr., has been engaged as an operator of a bus line, as a transportation consultant, and as an attorney practicing before the Interstate Commerce Commission. He is chairman of the Transportation Committee of the Mexican Chamber of Commerce of the United States, Inc., of Newark, and was found to be informed about transportation conditions, requirements and operations in Mexico, as well as the handling of traffic between Mexico and the United States through Customs. Although the corporation is presently a "shell" which must obtain a franchise before actually going into business, applicant contended that its stockholders, including Mr. Flynn, are able to advance additional moneys as needed.

Nine supporting shipper witnesses testified on behalf of the application as to the commodities now shipped to and from Mexico and methods of transportation utilized. Their support was primarily based on the expectation of obtaining faster service, reduction or elimination of delays in clearing Customs at the Border, stricter control over the movement of their traffic, with resulting convenience in tracing shipments and fixing responsibility for loss or damage, avoidance of interchange and reduction in the number of handlings to which their traffic is presently subjected.

After a detailed analysis of the applicant, the proposed operation, the testimony of the witnesses for all parties and the contentions, the examiner in his report and order discussed fully and made findings on the issues of whether the proposed operation is responsive to a public need which cannot be met adequately by existing transportation facilities, whether applicant can perform such

operation without adversely affecting the operations of existing carriers contrary to the public interest, and whether applicant is fit, willing and able properly to perform the proposed service and to conform to the requirements of the Act and the Commission's rules and regulations thereunder.

Briefly stated, the examiner concluded that a striking difference existed between the proposed service and that afforded by the existing carriers, since applicant would be the only carrier providing through-trailer service for southbound traffic to Mexico with interlining of the trailers and clearing of Mexican Customs at the Border, and through-trailer in-bond service on northbound traffic from Mexico to Newark. He also found distinctive the assistance to be afforded shippers in the preparation of documents and obtaining of permits and certifications to expedite southbound shipments, reduce much of the considerable rehandling of freight at the Border, and eliminate the need for a Customs broker. There presently is no through-trailer motor carrier service available between the Newark area and points in Mexico, nor is there single line motor service between Newark and any point on the Texas-Mexican Border, including Brownsville. Present traffic involves at least one interchange between existing carriers.

"As a result of the foregoing review of the proposed service and existing motor service, it is readily apparent that the former not only would be a substantial improvement over the latter, principally by speeding up the through movement of traffic between the United States and Mexico, but would constitute, in effect, a new and unique service not presently available to the shipping public, viz., a specialized through-trailer motor service dedicated exclusively to the movement of traffic in foreign commerce to and from Mexico."—Report and Order of Examiner, Plaintiffs' Exhibit 4, p. 30.

Noting that applicant had not produced numerous supporting shippers in these proceedings, the examiner nevertheless determined that their testimony constituted a representative showing, and repetitive and cumulative evidence was both unnecessary and undesirable. The preference of these shippers at the present time is for freight forwarder service which generally utilizes the rails but that also uses water carrier, rail, motor, air freight, railway express, and parcel post service.

"Thus it is the examiner's conclusion that the evidence of the supporting shippers is sufficiently representative of the shipping public's experience and requirements respecting service between the points involved, and that it fairly establishes a public need for the proposed service."—Report and Order of Examiner, Plaintiffs' Exhibit 4, p. 31.

The examiner took official notice of the substantial amount of commerce between the United States and Mexico which would be further promoted by this "new and improved service not otherwise available." He concludes that the amount of commerce and variety of commodities shipped between the two countries will provide ample traffic for applicant, and would not adversely affect the operations of existing carriers contrary to the public interest.

"Indeed, in view of the established superiority of the proposed through-trailer service, as compared to that provided by the existing carriers, it is clear that grounds exist for their fears respecting the diversion of some traffic by applicant."—Report and Order of Examiner, Plaintiffs' Exhibit 4, p. 31.

Such diversion, however, did not warrant the conclusion that the ability of the existing carriers to continue performance of their authorized services would be impaired. Applicant's proposal was found to be responsive to a public need, and

"on the basis of the record herein, it would constitute an affront to the public interest as well as a denial of

progress, if the shipping and consuming public were to be denied the advantages of the proposed up-to-date and different service shown to be needed by it solely because of a desire to protect the status quo among existing carriers at any cost." —Report and Order of Examiner, Plaintiffs' Exhibit 4, p. 32.

Finally, the examiner found that the experience of applicant's president and the financial aid available justified the conclusion that applicant is fit and able, financially and otherwise, properly to perform the proposed operation.

A careful review of the record made in these proceedings convinces us that the findings and conclusions of the examiner are supported by substantial evidence. They are attacked here by Plaintiffs on various grounds, but we cannot say that they are arbitrary, unsupported or inadequate.

As to the finding that the present and future public convenience and necessity require the granting of an appropriate certificate to this applicant, it is supported by the findings that the new service would be different, distinctive and an improvement over existing services; and these findings, in turn, were supported by the record.

This Court is not authorized to substitute its judgment for that of the Commission which has been given broad discretion in determining public convenience and necessity. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); Administrative Procedure Act, § 10, 5 U.S.C. § 1009(e).

"The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of the function the Commission has been entrusted with a wide range of discretionary authority."—United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945).

We believe that the requirements of the Administrative Procedure Act, 5 U.S.C. § 1007(b), for a statement of findings and conclusions, as well as the reasons or basis therefor, have been fully met here. The conclusion of the Commission finds support in the record as a whole, even though we might justifiably have made a different choice had the matter been before us de novo; and, therefore, this Court may not set the order aside. T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777, S.D.Tex. 1960.

If the national transportation policy is intended to promote economical and efficient service and foster wholesome and sound economic conditions in transportation among the carriers, then this report and order are in conformity therewith.

Plaintiffs' contention that proof of inadequacy in existing service is a basic ingredient of public need, we think has been met by the Commission's adopted findings which carefully and fully analyze the adequacy of existing service, the present and probable future need for the proposed service, and the effect of the additional competition on existing rail and motor carriers.

We agree that inadequacy of present service is certainly an element to be considered in arriving at a determination of public convenience and necessity, but not that a specific finding of inadequate service is necessary. Sloan's Moving & Storage Co. v. United States, 208 F.Supp. 567, E.D.Mo.1962, affirmed per curiam 374 U.S. 95, 83 S.Ct. 1687, 10 L.Ed.2d 1026 (1963); Nashua Motor Express, Inc. v. U. S., 230 F.Supp. 646, D.N.H.1964, and cases cited therein.

Having found substantial evidence to support the adequate basic findings of the Commission, we cannot say that its conclusions and order are arbitrary, erroneous or in excess of statutory authority.

The final issue remaining for disposition is that of applicant's compliance with Section 217 of the Interstate Commerce

Act, 49 U.S.C. § 317,[1] within the ninety days allowed by the order.[2]

Plaintiffs contend that the order has become null and void by its own terms because of the failure of the applicant to comply with the tariff requirement of Section 217 of the Act, and that the mere filing of a tariff within the time specified was insufficient because the date on which the tariff would become effective, being thirty days from the date of its filing, was after expiration of the ninety days from service of the decision and order.[3]

Defendants argue that this issue is not properly before the Court, since it involves events outside the record in this proceeding and since Plaintiffs have not allowed the Commission to first determine whether compliance has been made. Defendants further contend that if this Court undertakes to decide the question, we should find that under the policy of the Commission, applicant complied fully with the order.

■ Apparently the Commission adopted a policy in 1960 which is evidenced by confidential memoranda between the Director of the Bureau of Operating Rights of the Commission and Division 1 thereof. This policy was approved, by which a carrier effects compliance with the requirements of Section 217 by merely filing its tariff publications on or before the ninetieth day after service of the order, and the actual establishment of rates is not required within the 90-day period. Thus it is clear that the applicant complied with the order as interpreted by the Commission, and this Court does not deem it proper to invalidate a procedural policy of the Commission which does not appear to be arbitrary or unreasonable. Section 217 requires no more than the filing by an applicant of its tariff publications, and we hold that Plaintiffs' position on this procedural matter is without merit. We may assume that the Commission will follow proper procedure in approving or disapproving applicant's proposed tariff schedules.

Therefore, the decision and order of the Commission concluding that an appropriate certificate should issue to the applicant here, after it determines that compliance has been made with the Act and the Commission's rules and regulations thereunder, is affirmed.

1. Section 217(a), 49 U.S.C. § 317(a), requires that "Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or foreign commerce. * * * The tariffs required by this section shall be published, filed, and posted in such form and manner, and shall contain such information, as the Commission by regulations shall prescribe; * * *."
217(c), 49 U.S.C. § 317(c), requires thirty days notice for any change in rates unless the Commission for good cause shown allows such change upon notice of a lesser duration.

2. *"It is further ordered,* That unless compliance is made by applicant with the requirements of sections 215, 217, and 221 (c) of the act within 90 days after the date of service of a notice to the parties that this order has become effective as the order of the Commission, or within such additional time as may be authorized by the Commission, the grant of authority made in said report shall be considered as null and void and the application shall stand denied in its entirety effective upon the expiration of the said compliance time."

3. Actually applicant filed its first tariff publication on June 4, 1965, which was published to become effective on July 6th, the 90th day. However, it was rejected by the Commission as illegal on June 18th, and the second tariff publication was filed on June 24th, within the ninety days, published to become effective on July 26th, after the 90-day period expired. A petition that it be rejected was denied by Division 2, and both the Board of Suspension and Division 2, acting as an appellate division, voted not to suspend this second tariff. However, the Commission by notice of July 23, 1965, stated that this action does not constitute approval of the protested schedules, so applicant's tariff publication has not yet been approved by the Commission.

The temporary restraining order issued by this Court on July 9, 1965, is dissolved, and this cause dismissed with costs to be taxed against the Plaintiffs.

This is and constitutes the final judgment in this cause.